**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| THE NAY COMPANY, | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. _____ |
| | ) |
| NAVIGATORS SPECIALTY INSURANCE COMPANY, COLONY INSURANCE COMPANY and THE HANOVER INSURANCE COMPANY, | ) JURY TRIAL DEMANDED ) ) ) |
| | ) |
|    Defendants. | ) |

## PLAINTIFF'S ORIGINAL COMPLAINT

The Nay Company files its Original Complaint against Navigators Specialty Insurance Company, Colony Insurance Company and The Hanover Insurance Company as follows:

**I.   THE PARTIES**

1. The Nay Company is a Texas corporation with its principal place of business in Ellis County, Texas.

2. Defendant Navigators Specialty Insurance Company ("Navigators") is a foreign surplus lines insurer doing business in Texas and can be served with process by serving its President, Stanley A. Galanski, at 400 Atlantic Street, Stamford, Connecticut 06901. The Nay Company intends to request that Navigators waive service of summons pursuant to Rule 4(d) of the Federal Rules of Civil Procedure.

3. Defendant Colony Insurance Company ("Colony") is a foreign surplus lines insurer doing business in Texas that can be served with process by serving its General Counsel, at P.O. Box 469011, San Antonio, Texas 78246. The Nay Company intends to request that Navigators waive service of summons pursuant to Rule 4(d) of the Federal Rules of Civil Procedure.

4.      The Hanover Insurance Company ("Hanover") is a foreign insurer doing business in Texas that can be served with process by serving its registered agent, CT Corporation System, at 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136.

## II.     JURISDICTION AND VENUE

5.      This Court has jurisdiction over this action under 28 U.S.C. § 1332 because the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between citizens of different states.

6.      Venue is proper in the United States District Court for the Northern District of Texas because it is the district in which a substantial part of the events or omissions giving rise to this lawsuit occurred.  Specifically, this action is an insurance coverage dispute arising out of the denial of coverage under insurance policies issued to or for the benefit of Plaintiff in this district.

7.      Defendants are all subject to this Court's specific and general jurisdiction because they each do business in the State of Texas and they each issued the insurance policies at issue to or for the benefit of Plaintiff in Texas.

## III.    FACTUAL BACKGROUND

A.      <u>The Occurrence at Issue in this Lawsuit</u>

8.      Southern Commodities, LLC hired The Nay Company to construct, *inter alia*, a 175-foot grain elevator adjacent to a Southern Commodities' grain silo in Uvalde, Texas.  In turn, The Nay Company hired Feed Mill Erection Company ("FMEC") as a subcontractor to perform much of the work for Southern Commodities.  In December 2014, FMEC was nearing completion of the grain elevator, which was anchored to the ground and stabilized with several guy wires in four ordinal directions.  FMEC determined that it needed to move a crane to a specific location on the construction site.  However, FMEC could not move the crane to the desired location because

the north guy wires blocked the path to the location. Accordingly, FMEC determined that it would need to completely disconnect the north guy wires. Concerned that the other wires would destabilize the grain elevator if they remained under tension, FMEC determined that it was advisable to slacken the east, south and west guy wires when disconnecting the north guy wires.

9. Thus, on December 21, 2014, FMEC disconnected the north guy wires and slackened all the others so that it could move the crane to the desired location. For approximately two hours after the wires were disconnected or slackened, the grain elevator remained erect and stable. However, although no work was being performed on or around the grain elevator, the top of the grain elevator began to sway. Shortly thereafter, the grain elevator toppled over, resulting in damage to the elevator and other surrounding property. No work was being performed on the grain elevator at the time it collapsed. The alleged property damage resulting from the collapse of the grain elevator exceeds $600,000.00 that should be covered under the insurance policies described herein.

B.   The Nay Company's Insurance Policies

10. The Nay Company had both a commercial general liability insurance policy and a builder's risk insurance policy that were in force at the time of the grain elevator collapse. In addition, The Nay Company was an additional insured under a commercial general liability insurance policy issued to FMEC.

11. Defendant Navigators Specialty Insurance Company issued to The Nay Company a commercial general liability insurance policy bearing Policy No. GA14CGL097717IC with a policy period spanning November 1, 2014 to November 1, 2015, and a per occurrence limit of $1 million (the "Navigators Policy"). Defendant Colony Insurance Company issued to FMEC a commercial general liability insurance policy bearing Policy No. 103 GL 0006683-00 with a

policy period spanning from October 14, 2014 to October 14, 2015, and a per occurrence limit of $1 million (the "Colony Policy"). The Nay Company is an additional insured under the Colony Policy. Defendant The Hanover Insurance Company provided The Nay Company with builder's risk coverage under Policy No. IHD 9272289 03 with a policy period spanning from November 1, 2014 to November 1, 2015, and a course of construction limit of $3 million (the "Hanover Policy").

12. As required by the policies identified above, Defendants were provided notice of the grain elevator collapse and the resulting damages. Colony agreed to pay the damages associated with damage to the property other than the grain elevator that was under construction, but disputed coverage for more than $250,000 in damages relating to the collapse of the grain elevator.

13. On October 16, 2015, Navigators responded to The Nay Company's tender of the claim. Navigators appears to concede that the damages would fall within the broad language of the Navigators' Policy insuring agreement, but asserts that one or more exclusions bar coverage for the damage to the collapsed grain elevator. A true and correct copy of Navigators' October 16, 2015 letter denying coverage for property damage to the grain elevator is attached hereto as Exhibit A. The Nay Company, acting through its broker, contested Navigators' denial of coverage [Exhibit B], but Navigators continues to insist that the Navigators Policy excludes coverage for the property damage to the grain elevator. The various exclusions on which Navigators relies are not applicable given the facts of the particular occurrence at issue.

14. Hanover denied coverage under the builder's risk policy it issued to The Nay Company citing a policy exclusion that excludes coverage for loss or damage that is caused by or results from an act, defect, error or omission relating to: 1) design, specifications, construction, materials, or workmanship; 2) planning, zoning, development, siting, surveying, grading, or

compaction; or 3) maintenance, installation, renovation, remodeling, or repair.  The exclusion on which Hanover relies is not applicable given the facts of the particular occurrence at issue.

## IV.   CAUSES OF ACTION

A.   <u>Breach of Contract as to Hanover</u>

15.   The Nay Company adopts and incorporates by reference the allegations in Paragraphs 8-14 herein.

16.   The Nay Company and Hanover are parties to a contract that is expressed in the written terms of the Hanover Policy.  Pursuant to the terms of the Hanover Policy, Hanover agreed to provide insurance coverage for covered projects which include metal erection projects including feed and grain mills.  The Southern Commodities grain elevator project is a covered project that was located within the territorial limits specified in the Hanover Policy.  The Hanover Policy provides coverage for "direct physical loss or damage caused by a covered peril to buildings or structures while in the course of construction, erection or fabrication."  The course of construction limit is $3 million.  The Hanover Policy covers all perils except any peril that is specifically excluded.  The collapse of the grain elevator was not caused by an excluded peril so the damages to the grain elevator project were squarely within the coverage provided by the Hanover Policy.  The Nay Company has satisfied all conditions precedent to the performance of Hanover's contractual obligations under the Hanover Policy.  Hanover failed to comply with its obligations under the Hanover Policy by denying The Nay Company's claim for coverage under the policy.  As the direct and proximate result of Hanover's failure to comply with its contractual obligations, The Nay Company has suffered damages that exceed the Court's minimum jurisdictional limits.  Moreover, The Nay Company is entitled to recover its reasonable and necessary attorney's fees pursuant to Chapter 38 of the Texas Civil Practice and Remedies Code.

B.   Breach of Contract as to Navigators

17.   The Nay Company adopts and incorporates by reference the allegations in Paragraphs 8-14 herein.

18.   The Nay Company and Navigators are parties to a contract that is expressed in the written terms of the Navigators Policy. Pursuant to the terms of the Navigators Policy, Navigators agreed to indemnify The Nay Company against damages because of property damage caused by an occurrence that takes place in the coverage territory during the policy period. The damage to the grain elevator described herein was property damage caused by an occurrence that took place in the coverage territory during the policy period. Although Navigators claims that the Navigators Policy excludes coverage for that property damage, none of the policy exclusions bar coverage for that damage. Thus, Navigators has breached its obligations under the Navigators Policy. As the direct and proximate result of Navigators breach of contract, The Nay Company has suffered actual damages that exceed the Court's minimum jurisdictional limits. Moreover, The Nay Company is entitled to recover its reasonable and necessary attorney's fees pursuant to Chapter 38 of the Texas Civil Practice and Remedies Code.

C.   Breach of Contract as to Colony

19.   The Nay Company adopts and incorporates by reference the allegations in Paragraphs 8-14 herein.

20.   The Nay Company is an additional insured under the Colony Policy such that The Nay Company and Colony are parties to a contract that is expressed in the written terms of the Colony Policy. Pursuant to the terms of the Colony Policy, Colony agreed to indemnify The Nay Company as an additional insured against damages because of property damage caused by an occurrence that takes place in the coverage territory during the policy period. The damage to the

grain elevator described herein was property damage caused by an occurrence that took place in the coverage territory during the policy period.  Although Colony claims that the Colony Policy excludes coverage for that property damage, none of the policy exclusions bar coverage for that damage.  Thus, Colony has breached its obligations to The Nay Company as an additional insured under the Colony Policy.  As the direct and proximate result of Colony's breach of contract, The Nay Company has suffered actual damages that exceed the Court's minimum jurisdictional limits.  Moreover, The Nay Company is entitled to recover its reasonable and necessary attorney's fees.

**WHEREFORE, PREMISES CONSIDERED,** The Nay Company respectfully requests that Defendants be cited to appear and answer herein and that, upon final hearing hereof, The Nay Company have and recover its actual damages, its reasonable and necessary attorney's fees, its costs of court, pre-judgment and post-judgment interest, and such other and further relief, at law or in equity, to which it may be justly entitled.

Respectfully submitted,

**GUS & GILBERT LAW FIRM
A PROFESSIONAL CORPORATION**

/s/ Dan Gus
**DAN GUS**
State Bar No. 24007288
209 E. Main Street
Waxahachie, Texas  75165
Telephone:  (214) 960-4116
Facsimile:   (214) 960-4140
dan@dan-gus.com

**ATTORNEY FOR THE NAY COMPANY**