IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| THE NAY COMPANY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:16-CV-02675-N |
| | § | |
| NAVIGATORS SPECIALTY INSURANCE COMPANY, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## ORDER

This Order addresses Defendant Hanover Insurance Company's ("Hanover") motion for summary judgment [43], motion to strike [74], and motions for leave [90, 91] and Plaintiff the Nay Company's ("Nay") motion to strike [76]. For the reasons set forth below, the Court denies the motions.

### I. ORIGINS OF THE DISPUTE

This case involves an insurance coverage dispute arising from the collapse of a grain elevator in Uvalde, Texas. In August 2014, Nay entered into a contract with Southern Commodities, LLC to install a new grain handling system, including grain bins, conveyors, and an elevator. Nay then hired Feed Mill Erection Company, Inc. ("FMEC") as a subcontractor to install the elevator.

In December 2014, FMEC was nearing completion of the elevator, which was anchored to the ground and stabilized with several guy wires. As it was completing installation, FMEC discovered that it needed to move a crane to a particular location to install

a grain spout.[1]  But the guy wires that anchored the elevator made it impossible to position the crane properly.  FMEC thus disconnected the north guy wires attached to the elevator and slackened the east, south, and west guy wires to make room for the crane.  Shortly thereafter, the elevator toppled over, resulting in damage to the elevator and the surrounding property.

Nay had a builder's risk insurance policy (the "Policy") with Hanover when the elevator collapsed.  The Policy provides in relevant part:

> **PERILS COVERED**
>
> "We" cover risks of direct physical loss or damage unless the loss is limited or caused by a peril that is excluded.
>
> **PERILS EXCLUDED**
>
> . . .
>
> **Defects, Errors, And Omissions** – "We" do not pay for loss or damage caused by or resulting from an act, defect, error, or omission (negligent or not) relating to:
>
>> 1) design, specifications, construction, materials, or workmanship;
>> 2) planning, zoning, development, siting, surveying, grading, or compaction; or
>> 3) maintenance, installation, renovation, remodeling, or repair.
>
> But if an act, error, or omission as described above results in a covered peril, "we" do cover the loss or damage caused by that covered peril.

App. in Supp. of Mot. for Sum. J. ("App.") 38, 40 [45].

---

[1] The grain spouting consisted of 14-inch diameter metal tubes that moved the grain from the top of the elevator to the grain bins located near the elevator.

ORDER – PAGE 2

On January 6, 2015, Nay made a claim on the Policy for the losses it sustained in connection with the elevator's collapse. After sending an adjuster and engineer to inspect the elevator site, Hanover denied Nay's claim under the Defects, Error, and Omissions exclusion (the "Defects Exclusion") in the Policy. Nay disagreed with Hanover's determination. On September 19, 2016, Nay filed suit for breach of contract against Hanover and two other insurance companies, arguing that they wrongfully failed to provide insurance coverage for the collapsed grain elevator.

## II. THE COURT DENIES HANOVER'S MOTION FOR SUMMARY JUDGMENT

Hanover now moves for summary judgment on Nay's claims [43]. For the reasons set forth below, the Court denies Hanover's motion.

### A. Summary Judgment Standard

Courts "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). In making this determination, courts must view all evidence and draw all reasonable inferences in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The moving party bears the initial burden of informing the court of the basis for its belief that there is no genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

When a party bears the burden of proof on an issue, she "must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in [her]

favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis omitted). When the nonmovant bears the burden of proof, the movant may demonstrate entitlement to summary judgment by either (1) submitting evidence that negates the existence of an essential element of the nonmovant's claim or affirmative defense, or (2) arguing that there is no evidence to support an essential element of the nonmovant's claim or affirmative defense. *Celotex*, 477 U.S. at 322–25.

Once the movant has made this showing, the burden shifts to the nonmovant to establish that there is a genuine issue of material fact such that a reasonable jury might return a verdict in its favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). Moreover, "[c]onclusory allegations, speculation, and unsubstantiated assertions" will not suffice to satisfy the nonmovant's burden. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc). Indeed, factual controversies are resolved in favor of the nonmoving party "'only when an actual controversy exists, that is, when both parties have submitted evidence of contradictory facts.'" *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999) (quoting *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995)).

### *B. Rules of Construction for Insurance Policies*

Because this is a diversity case, Texas rules of contract interpretation govern the dispute. *See Canutillo Indep. Sch. Dist. v. National Union Fire Ins. Co.*, 99 F.3d 695, 700 (5th Cir. 1996); *see also* TEX. INS. CODE ANN. art. 21.42 (1999). The Fifth Circuit has summarized the relevant law as follows:

> Under Texas law, the terms used in an insurance policy are to be given their ordinary and generally accepted meaning, unless there is an indication that the words were meant in a technical or different sense. *Canutillo*, 99 F.3d at 700 (citing *Security Mut. Cas. Co. v. Johnson*, 584 S.W.2d 703, 704 (Tex. 1979)). The policy is to be considered as a whole, with each part given effect and meaning. *See* [*Canutillo*, 99 F.3d at 700] (citing *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133 (Tex. 1994)).
>
> It is well established under Texas law that ambiguities in insurance contracts are to be strictly construed against the insurer. *See Sharp v. State Farm Fire and Cas. Ins. Co.*, 115 F.3d 1258, 1260-61 (5th Cir. 1997) (citing *Puckett v. U.S. Fire Ins. Co.*, 678 S.W.2d 936, 938 (Tex. 1984)). This is "'especially so when dealing with exceptions and words of limitation.'" *Lubbock County* [*Hosp. Dist. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 143 F.3d 239, 242 (5th Cir. 1998)] (quoting *Ramsay v. Maryland Am. Gen. Ins. Co.*, 533 S.W.2d 344, 349 (Tex. 1976)). If a policy clause is ambiguous, the court must adopt the insured's construction of the clause, "'as long as that construction is not unreasonable, even if the construction urged by the insurer appears more reasonable or a more accurate reflection of the parties' intent.'" [*Lubbock County*, 143 F.3d at 242] (quoting *National Union Fire Ins. Co. v. Hudson Energy Co.*, 811 S.W.2d 552, 555 (Tex. 1991)).
>
> These rules favoring the insured apply only if the contract is determined to be ambiguous. *See* [*Sharp v. State Farm Fire and Cas. Ins. Co.*, 115 F.3d 1258, 1261 (5th Cir.1997)]. Whether the contract is ambiguous is a question of law for the court to decide. *See id.* The fact that the parties disagree as to coverage does not create an ambiguity. *See id.* The court looks first to the language of the policy itself. *See id.* If the policy clause is susceptible of only one reasonable interpretation, the court must enforce the clause as written, *see Lubbock County*, 143 F.3d at 242, even if disfavorable to the insured.

*Jarvis Christian Coll. v. Nat'l Union Fire Ins. Co.*, 197 F.3d 742, 746–47 (5th Cir. 1999); *accord Am. Int'l Spec. Lines Ins. Co. v. Rentech Steel LLC*, 620 F.3d 558, 562-63 (5th Cir. 2010).

Courts applying Texas law also refuse to construe insurance policies in ways that would render coverage under the policy illusory. *See ATOFINA Petrochemicals, Inc. v. Cont'l Cas. Co.*, 185 S.W.3d 440, 444 (Tex. 2005) (rejecting insurer's proposed

ORDER – PAGE 5

interpretation of policy exclusion where interpretation "would render coverage under the endorsement largely illusory"); *see also Trinity Universal Ins. Co. v. Cowan*, 945 S.W.2d 819, 828 (Tex. 1997) (rejecting interpretation of policy that "would render insurance coverage illusory for many of the things for which insureds commonly purchase insurance").

Finally, Texas law distinguishes between cases involving "separate and independent" causation and those involving "concurrent" causation when both covered and noncovered events cause an injury. *Utica Nat. Ins. Co. of Tex. v. Am. Indem. Co.*, 141 S.W.3d 198, 204 (Tex. 2004). "In cases involving separate and independent causation, the covered and the excluded event each independently cause the [insured's] injury, and the insurer must provide coverage despite the exclusion." *Utica*, 141 S.W.3d at 204 (citing *Guaranty Nat'l Ins. Co. v. N. River Ins. Co.*, 909 F.2d 133, 137 (5th Cir. 1990)). In contrast, the Texas Supreme Court has noted that:

> [i]n cases involving concurrent causation, the excluded and covered events combine to cause the plaintiff's injuries. Because the two causes cannot be separated, the exclusion is triggered. *See Travelers Indem. Co. v. Citgo Petroleum Corp.*, 166 F.3d 761, 771–72 (5th Cir.1999) (holding that, under Texas law, liability for failing to follow separate corporate safety standards was necessarily derivative of excluded negligent driving claim); *Burlington Ins. Co. v. Mexican Am. Unity Council*, 905 S.W.2d 359, 363 (Tex. App. – San Antonio 1995, no writ) (holding that, because negligent supervision of youth home resident and the assault and battery which caused her injuries were not "separate and independent," an assault and battery exclusion applied); *Thornhill v. Houston Gen. Lloyds*, 802 S.W.2d 127, 130 (Tex. App. – Fort Worth 1991, no writ) (holding that, because the claims were "related and interdependent," sale-to-minors exclusion in general liability policy applied to claims that a store was negligent in selling alcohol to minors as well as training its employee on permissible purchases).

*Mid-Continent Cas. Co. v. Kipp Flores Architects, L.L.C.*, 602 Fed. App'x 985, 995–96 (5th Cir. 2015) (quoting *Utica*, 141 S.W.3d at 204).

### *C. The Court Denies Hanover's Motion*

Hanover now moves for summary judgment on the grounds that the Policy does not cover Nay's losses stemming from the collapse of the elevator. As set forth above, the Policy covers all "risks of direct physical loss or damage unless the loss is limited or caused by a peril that is excluded." App. 38 [45]. The Defects Exclusion in turn bars coverage for "loss or damage caused by or resulting from an act, defect, error, or omission (negligent or not)" involving:

> (1) "design, specifications, construction, materials, or workmanship;"
>
> (2) "planning, zoning, development, siting, surveying, grading, or compaction;" or
>
> (3) "maintenance, installation, renovation, remodeling, or repair."

*Id.* at 40. The Policy also contains an ensuing loss provision (the "Ensuing Loss Clause"), which provides that "if an act, error, or omission as described above results in a covered peril, 'we' do cover the loss or damage caused by that covered peril." *Id*.

### *1. The Policy's Defects Exclusion Precludes Coverage for the Grain Elevator's Collapse.*

– Hanover argues that the Policy's Defects Exclusion bars coverage for the collapse of the grain elevator because Nay's removal of the guy wires was an "act, defect, error, or omission (whether negligent or not)" involving workmanship, construction, siting, planning, surveying, or installation with respect to the grain elevator. *See id*. Hanover further argues that even if the wind also contributed to the elevator's collapse, the concurrent

causation doctrine precludes coverage because the removal of the guy wires and the force of the wind on the elevator concurrently caused the elevator to fall.

Based on the record, it appears that both the wind and the removal of the guy wires combined to cause the grain elevator's collapse, thus triggering the Policy's Defects Exclusion. *See Utica*, 141 S.W.3d at 204 ("In cases involving concurrent causation, the excluded and covered events combine to cause the plaintiff's injuries. Because the two causes cannot be separated, the exclusion is triggered." (citations omitted)). But this does not end the Court's inquiry. The Court must next consider whether the Policy's Ensuing Loss Clause reinstates coverage.

*2. Even Though the Defects Exclusion Applies, the Policy's Ensuing Loss Clause Reinstates Coverage.* – The Ensuing Loss Clause provides that, "if an act, error, or omission as described above results in a covered peril, 'we' do cover the loss or damage caused by that covered peril." App. 40 [45]. Nay contends that even if the Defects Exclusion precludes coverage, the Ensuing Loss Clause reinstates coverage because Nay's removal of the guy wires resulted in a "covered peril" – the collapse of the grain elevator due to wind. In response, Hanover argues that the Ensuing Loss Clause does not apply here because Nay's removal of the guy wires did not result in the wind that Nay contends knocked down the elevator.

The Court rejects Hanover's narrow reading of the Ensuing Loss Clause for two reasons. First, the Ensuing Loss Clause is ambiguous. Nowhere does the policy specify the circumstances under which an excluded act might be found to "result[] in" a covered peril.

*See id.* Because the phrase "results in" is susceptible to more than one interpretation, it is ambiguous. *See Jarvis*, 197 F.3d at 751 ("Under Texas law, a contract is ambiguous if it is reasonably susceptible of two different meanings." (citations omitted)). The Court must therefore adopt Nay's construction of the Ensuing Loss Clause "as long as that construction is not unreasonable, even if the construction urged by [Hanover] appears more reasonable or a more accurate reflection of the parties' intent." *Id*. at 746 (internal quotation marks omitted).

Here, Nay interprets the Ensuing Loss Clause as reinstating coverage because even though Nay's removal of the guy wires was an excluded act under the Policy's Defects Exclusion, it resulted in a covered peril – the elevator's collapse due to wind. Given that the Policy broadly defines covered perils to include all "risks of direct physical loss or damage unless the loss is limited or caused by a peril that is excluded," App. 38 [45], and the Ensuing Loss Clause is ambiguous, the Courts holds that Nay's interpretation of the Ensuing Loss Clause is not unreasonable. The Court thus adopts Nay's reading of the provision.

Second, adopting Hanover's proposed construction of the Ensuing Loss Clause would render coverage under the Policy largely illusory. A builder's risk policy such as the Policy at issue is "a species of property loss insurance by which the builder seeks to insulate itself from liability occasioned by damage to or loss of the structure which the builder has contracted to produce." 9A Couch on Insurance § 132:20 (3d ed. 2017); *see also, e.g., Nat'l Fire Ins. Co. of Pittsburgh, Pa. v. Valero Energy Corp.*, 777 S.W.2d 501, 504 (Tex. App. – Corpus Christi 1989, writ denied) ("The insurance agreement, known as an all-risk or

builder's risk policy, insured generally, subject to certain named exclusions, against all occurrences causing physical loss or damage to property used in the expansion project during the expected construction period"). But while Hanover's Policy purports to insure Nay against damages caused by Nay's construction-related activities, the Defects Exclusion precludes coverage for damage arising from nearly all imaginable actions remotely related to construction activities. *See* App. 40 [45] (excluding coverage for "loss or damage caused by or resulting from an act, defect, error, or omission (negligent or not)" involving (1) "design, specifications, construction, materials, or workmanship;" (2) "planning, zoning, development, siting, surveying, grading, or compaction;" or (3) "maintenance, installation, renovation, remodeling, or repair."). Hanover argues that the Ensuing Loss Clause does not apply to reinstate coverage because Nay's removal of the guy wires did not "result" in the wind that at least in part caused the grain elevator to fall. But under Hanover's broad Defects Exclusion, in conjunction with Texas' concurrent causation doctrine and Hanover's narrow reading of the Ensuing Loss Clause, the Policy essentially covers nothing at all. And courts applying Texas law refuse to construe insurance policies in ways that would render coverage illusory. *See ATOFINA*, 185 S.W.3d at 444 (rejecting insurer's proposed interpretation of policy exclusion where interpretation "would render coverage under the endorsement largely illusory."); *see also Trinity*, 945 S.W.2d at 828 (Tex. 1997) (refusing to interpret policy in manner that "would render insurance coverage illusory for many of the things for which insureds commonly purchase insurance."). The Court thus declines to adopt Hanover's interpretation of the Ensuing Loss Clause.

ORDER – PAGE 10

Even if Nay's removal of the guy wires triggered the Defects Exclusion under the concurrent causation doctrine, the Court agrees with Nay that the removal of the guy wires resulted in a covered peril – the elevator's collapse due to wind. Hanover therefore cannot show as a matter of law that Nay cannot satisfy its burden of demonstrating that the Ensuing Loss Clause reinstates coverage. The Court thus denies Hanover's motion for summary judgment.

### III. THE COURT DENIES HANOVER'S MOTION TO STRIKE

Hanover also moves to strike the testimony of Frank Loeffler, Nay's engineering expert retained to testify about the causes of the elevator's collapse [74]. The Court denies Hanover's motion.

Expert testimony is admissible if: (1) the expert is qualified; (2) the testimony is relevant to the lawsuit; and (3) the testimony is reliable. FED. R. EVID. 702; *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999). The Court has broad discretion in determining the admissibility of expert testimony, and the rejection of expert testimony is the exception, not the rule. *In re DePuy Orthopaedics, Inc. Pinnacle Hip Implant Prod. Liab. Litig.*, No. 3:11-MD-2244-K, 2016 WL 9560113, at *2–3 (N.D. Tex. Oct. 3, 2016) (citations omitted).

Hanover first asserts that Loeffler is unqualified to testify regarding wind speed data on the date of the elevator's collapse because Loeffler is not a meteorologist. But Nay is not offering Loeffler as a meteorology expert. And Loeffler relies on wind speed data provided by *Hanover's* expert meteorology witness in this case. Given Loeffler's experience in the construction of grain elevators and computation of wind forces against such structures – the

ORDER – PAGE 11

areas on which Nay has offered him as an expert – the Court declines to strike his testimony.

Hanover next claims that Loeffler's testimony is irrelevant because it does not evaluate whether the grain elevator would have remained standing if Nay had not removed the supporting guy wires. In so doing, Hanover essentially restates its arguments for summary judgment. But to be relevant, "expert testimony [must] 'assist the trier of fact to understand the evidence or to determine a fact in issue.'" *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 591 (1993). That Loeffler's testimony does not address what Hanover contends is the key issue in this case does not make the testimony irrelevant.

Hanover's remaining objections regarding the reliability of Loeffler's conclusions go to the weight, rather than the admissibility, of Loeffler's testimony. *See United States v. 14.38 Acres of Land, More or Less Situated in Leflore Cnty., State of Miss.*, 80 F.3d 1074, 1077 (5th Cir. 1996) ("As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration." (citation and internal quotation marks omitted)); *see also Daubert*, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."). As the weight of expert testimony is a matter for the jury to consider, the Court denies Hanover's motion to strike.

### IV. THE COURT DENIES NAY'S MOTION TO STRIKE

Nay moves to strike various portions of Hanover's summary judgment appendix [76].

The Court denies the motion.[2]

Nay first moves to strike Hanover's March 23, 2015 letter denying Nay's claim for coverage under the Policy. But Nay states that it does not object to the letter if it is offered only to provide evidence of the history of the parties' dealings with respect to Nay's claim. Hanover responds that it offers the letter for this exact purpose. The Court thus denies Nay's motion to strike Hanover's March 23, 2015 denial of coverage letter.

Nay next moves to strike the original expert report of Stephen Harned, Hanover's meteorology expert, because it reports wind speed data from December 21, 2014. Nay argues that the data is irrelevant because the grain elevator actually collapsed on the preceding day, December 20, 2014. But Nay pleaded in its complaint that the elevator collapsed on December 21, 2014, and Nay never amended its complaint to list a different date of collapse. The Court will not now strike Harned's expert report for relying on Nay's allegations.

Nay's remaining objections to the expert reports provided by Hanover experts Richard Windham, Bruce Barnes, and Craig Reiner all go to the weight, not the admissibility, of the experts' reports. *See United States v. 14.38 Acres of Land*, supra; *see also Daubert*, supra. Because the weight of expert testimony is a matter for the jury to consider, the Court denies Nay's motion to strike the expert reports.

---

[2] The Court denies as moot Hanover's alternative motions for leave to extend the motion filing deadline [90] and to supplement its summary judgment brief and appendix [91].

## CONCLUSION

The Court denies Hanover's motion for summary judgment [43]. The Court further denies Hanover's motion to strike the expert testimony of Frank Loeffler [74], Nay's motion to strike various portions of Hanover's summary judgment appendix [76], and Hanover's alternative motions for leave [90, 91].

Signed June 12, 2018.

_____
David C. Godbey
United States District Judge

ORDER – PAGE 14